[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 30, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-17236
Non-Argument Calendar

_____

D. C. Docket No. 07-00124-CV-RWS-2

WILLIAM BAKER,

Plaintiff-Appellant,

versus

RYAN P. MOSKAU,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 30, 2009)

Before BIRCH, BARKETT and FAY, Circuit Judges.

PER CURIAM:

Appellant William Baker ("Baker") appeals the order of the United States

District Court for the Northern District of Georgia denying his motion for partial summary judgment on his 42 U.S.C. § 1983 claim for false arrest and granting Appellee Ryan P. Moskau's ("Moskau") motion for summary judgment. Baker argues that the district court erred in finding that Moskau was entitled to qualified immunity. Our review of the record convinces us otherwise. Accordingly, we AFFIRM.

## I. BACKGROUND

When considering a district court's grant of summary judgment in favor of the defendant, "we are required to view the facts, which are drawn from the pleadings, affidavits, and depositions, in the light most favorable to the plaintiff." Tapley v. Collins, 211 F.3d 1210, 1212 n.4 (11th Cir. 2000) (quotation marks and citation omitted). We recite the facts of the case viewed through that prism.

Just after midnight on 1 April 2006, Baker was traveling home from work after completing his shift. See R2-47 at 7. His route took him from Marietta, through the City of Roswell and into Alpharetta, Georgia. As he passed into Alpharetta, Baker was pulled over by Moskau, a police officer with the Roswell Police Department. The events giving rise to the traffic stop are well documented in the record.

At about 1 A.M. on 1 April 2006, Christopher D. Jones ("Jones"), a person

2

not a party to this case, observed a white Trans Am vehicle with flashing strobe lights built into its rear near the intersection of Alpharetta Highway and Mansell in the City of Roswell. Jones called 911, provided the dispatcher with the vehicle's tag number and told the dispatcher that the driver of the vehicle was "pretending like he has police lights." R2-45 (911 audio). Jones reported that another car that was in front of the strobe-bedecked Trans Am had pulled aside into a parking lot in order to get out of its way. While keeping Jones on the line, the 911 dispatcher directed Moskau to the location described by Jones as Jones continued to tail the Trans Am. See id. Within minutes, Moskau spotted the white Trans Am and initiated a traffic stop just outside the city limits of Roswell and inside the City of Alpharetta. As the Trans Am pulled over to the side of the road and came to a stop, Moskau observed rear strobe lights flashing on the car.[1] See R1-39 at 19. Jones also pulled over and stopped several yards behind Moskau's patrol car.

After determining that Baker was the driver of the Trans Am, Moskau asked Baker to exit the vehicle. Moskau and Baker then simultaneously observed the rear of Baker's vehicle for a few moments. Moskau then performed a quick search

_____

[1] The district court noted that Baker disputed that his rear strobe lights were activated immediately prior to Moskau's initiation of the traffic stop. See R2-52 at 2 n.1. We agree with the district court that it is difficult to discern from viewing the video whether the strobe lights on Baker's vehicle were activated during Moskau's short pursuit. That said, we note the other record evidence indicating that the strobe lights were on prior to the traffic stop: Moskau's affidavit, Moskau's deposition testimony, the 911 audio tape, and Jones's written statement. See R1-44, Exh. B; R1-39; R2-45; R1-34, Exh. 1.

3

of Baker's person, placed Baker in handcuffs, and asked him to sit on the curb by the side of the road. Baker complied. See R1-39 at 25-26. Moskau then asked Baker for permission to search his vehicle. Baker consented, responding that he "[didn't] have anything to hide." R2-47 at 12.

Moskau's subsequent search of the Trans Am's interior revealed a switch box near the gear shift in the middle, front console. See R1-39 at 28-29; R1-44, Exh. B at 4. As Moskau continued his investigation, Officer Gato of the Roswell Police Department arrived on the scene. See R1-39 at 27-28. Both officers continued to inspect the vehicle, ultimately confirming that at least some switches on the switch box activated clear strobe lights in the front and rear of Baker's vehicle. See R1-37, patrol video. Moskau then conferred with Gato regarding the legality of the strobe lights and also consulted his Georgia Code book for guidance concerning the lights. See R1-44, Exh. B at 5. Next, Moskau interviewed Jones, who had pulled over behind Moskau's patrol car. Jones confirmed that he had witnessed Baker activate his strobe lights and also provided a written statement to the same effect. See R1-34, Exh. 1; see also R1-39 at 32-33.

Approximately thirty minutes after initiating the traffic stop, Moskau arrested Baker for impersonating an officer. As stated by Moskau in his affidavit, "[t]his decision was made only after I completed my investigation, which consisted

of speaking to Baker, inspecting the exterior and interior of the car, determining the purpose of the switches in Baker's vehicle, conferring with Officers Gato and McRae, speaking to Mr. Jones, and reviewing the Georgia Code book in my patrol unit." R1-44, Exh. B. at 6. The charges later were dismissed due to Moskau and Jones's failure to appear at Baker's trial – Moskau having resigned from the Roswell police force on 8 July 2006 and Jones apparently not having received the notice to appear. See R2-47 at 32; R1-44, Exh. B at 7; R1-39 at 47-49.

Baker appears to make two arguments on appeal. First, he contends that the district court incorrectly determined that no issues of material fact existed regarding his § 1983 for false arrest. Second, Baker argues that the district court erred in finding Moskau entitled to qualified immunity.[2] We address each argument in turn.

## II. DISCUSSION

"We review de novo the district court's disposition of a summary judgment motion based on qualified immunity, resolving all issues of material fact in favor of Plaintiffs and then answering the legal question of whether Defendants are entitled to qualified immunity under that version of the facts." Case v. Eslinger,

---

[2] Because Baker presented no argument regarding his state law claim or his extra-jurisdictional arrest claim in his initial brief, he has abandoned those claims. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (per curiam).

5

555 F.3d 1317, 1324-25 (11th Cir. 2009) (quotation marks and citation omitted).

We stress, however, that "a mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citation omitted). We think it instructive to revisit the Supreme Court's admonitions on this issue as set out in Scott v. Harris, 550 U.S. 372, 127 S. Ct. 1769 (2007).[3] In Scott, the Court reminds us that

> when a moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Id. at 380, 127 S. Ct. at 1776 (quotation marks, citations, and alterations omitted). Finally, because part of the record evidence before us is in the form of an uncontested video that captures much of action at hand, we are mindful of the Court's parting advice to "view[] the facts in the light depicted by the video[]." Id.

---

[3] In Scott, as in the case now before us, the Court was presented with a video that substantially captured the action at issue.

at 381, 127 S. Ct. at 1776.

We next survey the legal landscape with regard to qualified immunity. "The doctrine of qualified immunity provides that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Case, 555 F.3d at 1325 (quotation marks and citation omitted). Qualified immunity represents an accommodation between two conflicting concerns – "the need for a damages remedy to protect the rights of citizens and the need for government officials to be able to carry out their discretionary functions without the fear of constant baseless litigation." GJR Investments, Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1366 (11th Cir. 1998). The immunity "protect[s] from suit all but the plainly incompetent or one who is knowingly violating the federal law." Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003) (quotation marks and citation omitted).

We have long held that in order to receive qualified immunity, a government official must first prove that he was acting within his discretionary authority.[4] GJR Investments, Inc., 132 F.3d at 1366. It is then the plaintiff who bears the burden of

_____

[4] It is undisputed that Moskau was acting within his discretionary authority at all relevant times.

7

showing that qualified immunity is not appropriate. Snider v. Jefferson State Cmty. Coll., 344 F.3d 1325, 1327 (11th Cir. 2003). When assessing qualified immunity cases, we consider whether a constitutional right has been violated and whether the right was clearly established by the law at the time of the violation. Saucier v. Katz, 533 U.S. 194, 200, 121 S. Ct. 2151, 2155 (2001). We note that we need no longer apply the "rigid order of battle" prescribed by Saucier but are free "to exercise [our] . . . discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." Pearson v. Callahan, 555 U.S. __, 129 S. Ct. 808, 817-18 (2009).

With the requisite legal framework in place, we now turn to each of Baker's arguments. First, we consider his contention that the district court incorrectly determined that no issues of material fact existed regarding his § 1983 for false arrest. Baker references two instances in which the district court allegedly made findings of fact in contradiction to the record evidence. His first reference highlights the alleged discrepancies regarding the information provided by Jones to Moskau. To the extent that the record contains any such discrepancies, we conclude that they were not genuine issues of material fact. Our conclusion rests on the well-established premise that an issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party and a fact is

not material if a dispute over that fact will not affect the outcome of the suit under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). In this case, the evidence includes the following: (1) Jones made a 911 call and told the operator that the driver of a white Trans Am was activating what appeared to be strobe lights on Alpharetta Highway; (2) Moskau responded to the 911 call; (3) Moskau confirmed that Baker's vehicle had attached strobe lights; (4) Moskau confirmed that Jones had witnessed Baker activate the strobe lights; (5) Moskau confirmed that tag number initially reported by Jones matched Baker's vehicle; and (5) Jones provided a written statement essentially detailing what he had told both Moskau and the 911 operator. Given the record evidence, any other matters regarding Jones and the information that he provided to Moskau that may or may not have been in dispute were immaterial to the district court's analysis.

The second set of facts about which Baker complains concerns the location of the strobe lights on his vehicle. Baker asserts that the district court erred in finding that his vehicle was equipped with strobe lights both in the front and rear and maintains that he only had strobe lights in the rear of his Trans Am. In our estimation, Baker's admission that his vehicle was equipped with rear strobe lights at the time of the incident in question settles the matter and completely saps his

argument of any force. Whether Baker's vehicle had front strobe lights is immaterial given the undisputed evidence that (1) Baker's vehicle had rear strobe lights; (2) Jones witnessed Baker activate the rear strobe lights; and (3) Moskau witnessed Baker activate the rear strobe lights. Accordingly, we conclude that the district court did not err in determining that no genuine issues of material fact existed with regard to Baker's § 1983 claim.

We now consider Baker's argument regarding the qualified immunity issue. At its heart, Baker's contention turns on whether Moskau had probable cause to arrest him. Baker urges us to find he did not and, as a result, that Baker suffered a false arrest in violation of the Fourth and Fourteenth Amendments. As we have said before, "[u]nder the Fourth Amendment, an individual has a right to be free from unreasonable searches and seizures . . . and an arrest is a seizure of the person. The reasonableness of a seizure or arrest under the Fourth Amendment turns on the presence or absence of probable cause." Case, 555 F.3d at 1326 (quotation marks, citations, and alterations omitted).

Moskau arrested Baker without a warrant. That fact, however, does not dislodge probable cause from its position at the center of our inquiry. "A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim, but the existence of probable cause at the time of

arrest constitutes an absolute bar to a section 1983 action for false arrest." Id. at 1326-27 (quotation marks, citation, and alterations omitted). "Probable cause to arrest exists when an arrest is objectively reasonable based on the totality of the circumstances. This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th Cir. 2004) (quotation marks and citation omitted).

In this case, Moskau arrested Baker for impersonating a police officer. As the district court noted in its analysis, such an offense is unlawful under Georgia law. The Georgia Code section cited in Baker's traffic citation was O.C.G.A. § 40-6-395. See R1-34 at Exh. 9. That provision reads, in part:

> (c) It shall be unlawful for a person:
>
> > (1) To impersonate a sheriff, deputy sheriff, state trooper, agent of the Georgia Bureau of Investigation, agent of the Federal Bureau of Investigation, police officer, or any other authorized law enforcement officer by using a motor vehicle or motorcycle designed, equipped, or marked so as to resemble a motor vehicle or motorcycle belonging to any federal, state, or local law enforcement agency; or
> >
> > (2) Otherwise to impersonate any such law enforcement

11

officer in order to direct, stop, or otherwise control traffic.

O.C.G.A. § 40-6-395(c). The district court determined that Moskau had arguable probable cause to arrest Baker and so was entitled to qualified immunity. Our consideration of the record, viewed in the light most favorable to Baker, compels us to go one further and conclude that Moskau not only had arguable probable cause, but actual probable cause to affect the arrest.

The undisputed record evidence consists of the following, among other things: (1) Jones called 911 and reported a white Trans Am flashing strobe lights at other vehicles on Alpharetta Highway; (2) the 911 operator dispatched Moskau to the scene; (3) Moskau pulled the Trans Am over and determined that Baker was the driver; (4) Moskau inspected the interior of the vehicle and discovered a switch box on the front console; (5) the switch box controlled at least the rear strobe lights on the Trans Am; (6) Jones confirmed to Moskau that the Trans Am was the same vehicle that he reported in his 911 call; (7) Jones repeated the substance of his 911 call to Moskau and reduced his oral statement to writing. This evidence, when viewed through the lens of our circuit precedent, leads us to conclude that Moskau had probable cause to arrest Baker. See, e.g., Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996) ("Probable cause does not require overwhelmingly convincing evidence, but only reasonably trustworthy information.") (quotation

12

marks and citation omitted). Consequently, no constitutional violation occurred and "[a]bsent evidence that a constitutional violation occurred, we need not consider whether the alleged violation was clearly established." Case, 555 F.3d at 1328. Following this logical thread to its inescapable conclusion, Moskau is immune from suit and the district court did not err in granting summary judgment in his favor.

### III. CONCLUSION

Baker appeals the district court's denial of his motion for partial summary judgment on his § 1983 claim for false arrest and its grant of summary judgment in Moskau's favor on qualified immunity grounds. Because we conclude that Moskau had probable cause to arrest Baker, no constitutional violation occurred and Moskau is entitled to qualified immunity. Accordingly, the district court did not err in granting summary judgment in favor of Moskau.

**AFFIRMED.**