[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 29, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-10657

_____

D. C. Docket No. 06-00832-CV-ORL-19-GAP

DAVID CASE,
ASSOCIATED INVESTIGATORS, INC.,
a Florida corporation,

Plaintiffs-Appellants,

versus

DONALD ESLINGER,
in his official capacity as Sheriff of Seminole
County, Florida,
CITY OF SANFORD, FL,
a Florida Municipal Corporation,
FRANK DAVIS,
individually,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(January 29, 2009)**

Before BIRCH and PRYOR, Circuit Judges, and STROM,[*] District Judge.

PRYOR, Circuit Judge:

This appeal presents the question whether an officer who received inconsistent allegations of criminal activity from an informant and independently corroborated several of those allegations had probable cause to make an arrest and seize property. After an investigation of thirty-seven days, Officer Frank Davis arrested David Case for larceny and passing a forged or altered instrument in connection with Case's repossession business, and Davis seized property related to the charges. The charges against Case later were dismissed, and Case then filed a civil complaint of false arrest and illegal seizure against Officer Davis, Sheriff Donald Eslinger, and the City of Sanford. The district court determined that Officer Davis, Sheriff Eslinger, and the City were entitled to qualified immunity. Because we conclude that Officer Davis had probable cause to arrest Case and seize his property, we affirm.

## I. BACKGROUND

David Case is the president and owner of Associated Investigators, which repossesses heavy trucks and trailers in central Florida. In 2002, Case entered a business arrangement with David Brannon to operate a transport business. As part

---

[*] Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by designation.

of this deal, Case loaned Brannon $85,000 and assumed title to three of Brannon's trucks as collateral for the loan. In March 2002, Case contacted the Sheriff's Office of Seminole County and requested an inspection of the three trucks to verify the vehicle identification number plates and obtain a temporary operating permit for each vehicle.

Deputy Paul Pratt was dispatched to inspect Case's trucks and verify the vehicle identification numbers. After Deputy Pratt was unable to verify the identification numbers, he did not issue temporary operating permits for the vehicles. Deputy Pratt testified that the identification number plate on one of the vehicles "looked like a plaque from a trophy shop on the dash, which is not a factory plate." Deputy Pratt could not locate an identification number plate on a second truck.

The parties dispute the instructions Deputy Pratt provided to Case to obtain the permits. Case contends that Deputy Pratt instructed Case to take the trucks to either the local Department of Motor Vehicles or the Department of Transportation to obtain titles for them. Sheriff Eslinger and the City of Sanford assert that the deputy advised Case to make an appointment with the City-County Auto Theft Bureau to verify the vehicle identification numbers. The titles to the trucks were eventually transferred to Case, and the Department of Motor Vehicles issued

3

temporary permits to Case.

In May 2002, Frank Davis, an officer with the Sanford Police Department, received information from John Stein, a former employee of Brannon and Case who had recently been fired, that Case was in possession of a stolen 1990 Peterbilt truck with an altered identification number plate. Officer Davis was assigned to the City-County Auto Theft Bureau Task Force and worked under the direct supervision of Sheriff Eslinger. Officer Davis initiated an investigation based on Stein's allegation.

During an interview, Stein informed Officer Davis that the Peterbilt truck that was transferred to Associated was stolen and that Brannon was involved in drug trafficking and had asked Stein to kill Brannon's former father-in-law. Stein provided Officer Davis with photographs of parts removed and replaced from the Peterbilt truck and overspray on the vehicle to support his allegation that the parts were illegally harvested. At that time, Stein stated that Case was not involved in any criminal activity.

Officer Davis contacted the National Insurance Crime Bureau to obtain information about the Peterbilt truck. When Officer Davis inspected the Peterbilt truck, he discovered multiple vehicle identification numbers. Members of the task force then seized the Peterbilt truck and searched property occupied by Associated.

4

After inspecting several vehicles Brannon had transferred to Associated, Officer Davis and Sergeant Berrios, another member of the task force, met with Case on May 14, 2002, and Davis informed Case that he found nothing of concern with the vehicles.

For thirty-seven days, Officer Davis conducted an investigation of the business dealings of Brannon, Case, and Associated. During the investigation, Officer Davis, along with other members of the task force, inspected numerous vehicles in the possession of Case and Brannon, interviewed witnesses, collected evidence, and consulted with superior officers and a state attorney. Officer Davis stated in his report that he saw vehicle parts he believed to be stolen in plain view at Associated.

During the course of the investigation, Officer Davis interviewed Stein on several occasions. On May 12, 2002, Stein informed Officer Davis that Brannon and Case instructed him to remove parts from a blue Peterbilt truck before Case repossessed it. Stein also stated that Case and Brannon had directed him to strip parts from other trucks that had been repossessed. Officer Davis interviewed Stein again on May 21, 2002, and Stein stated that Case and Brannon instructed him to sign the names of other individuals on two truck titles and a trailer title on March 29, 2002.

5

On May 28, 2002, Case contacted Officer Davis about a car hauler Case had repossessed from Brannon that had its identification number plate switched with a different trailer. Officer Davis advised Case to secure the trailer that did not have an identification plate until it could be impounded. Case informed Officer Davis that he also had repossessed a green Kenworth truck from Brannon and that the rear tires and rims and other parts had been removed from the truck before Case had recovered the vehicle. Case then met with Officer Davis and provided him with a sworn statement and photographs.

On May 29, 2002, Officer Davis again interviewed Stein. During this interview, Stein stated that Case instructed him to strip parts from the green Kenworth truck that Case had identified to Officer Davis. Stein also stated that Case shared a stolen trailer with Brannon, had switched the identification number plates on two trailers, and had stolen a tag from one trailer to use on another.

Officer Davis then visited the Adessa Auto Auction where he located the green Kenworth truck. Officer Davis contacted Fred's Tire Service and verified that they had removed tires and six rims from a green Kenworth truck at Brannon's request. The employee of Fred's Tire Service who removed the tires and rims identified Case, Brannon, and Stein as having been present when the employee performed the work. The employee told Officer Davis that he delivered the tires

6

and rims to Associated, where he again saw Case, Brannon, and Stein. On June 14, 2002, Officer Davis conducted a final interview with Stein during which Stein stated that Case and Brannon were both involved in swapping the identification number plates and removing parts on numerous trucks.

On June 17, 2002, Officer Davis arrested Case, without a warrant, and seized several pieces of property from Case's place of business, including six aluminum rims. Case was charged with passing a forged or altered instrument, Fla. Stat. § 831.02, larceny of more than $300 but less than $2000, id. § 812.014, and as an accessory after the fact, id. § 777.03.

Case was held at the Seminole County jail for approximately ten hours. Case posted bond at 3:30 p.m. and was released at 11:15 p.m. According to Case, a correction officer informed him that he should have been released at least five hours earlier. Case alleges that during his incarceration money and credit cards were stolen from his wallet and that he "complained to [Sheriff] Eslinger about the theft of his property, but Eslinger did nothing."

After Case's arrest, the Peterbilt truck that Officer Davis seized was delivered to the lienholder, and Case alleges that Officer Davis was involved in this delivery. Case also alleges that he lost business because Officer Davis informed Case's clients that Case had been arrested for removing parts from trucks that he

7

repossessed.  After the charges against Case eventually were dismissed by the state prosecutor, Case filed a complaint against Officer Davis, Sheriff Eslinger, and the City for false arrest and illegal seizure of property.  The district court granted summary judgment in favor of Officer Davis, Sheriff Eslinger, and the City.  Case sought reconsideration from the district court in a postjudgment motion, which was denied.

## II.  STANDARDS OF REVIEW

We review "de novo the district court's disposition of a summary judgment motion based on qualified immunity, resolving all issues of material fact in favor of Plaintiffs and then answering the legal question of whether Defendants are entitled to qualified immunity under that version of the facts."  West v. Tillman, 496 F.3d 1321, 1326 (11th Cir. 2007).  "With the facts so construed, we have 'the plaintiff's best case in hand,' and therefore, 'material issues of disputed fact are not a factor in the court's analysis of qualified immunity and cannot foreclose the grant or denial of summary judgment based on qualified immunity . . . .'"  Bates v. Harvey, 518 F.3d 1233, 1239 (11th Cir. 2008) (quoting Robinson v. Arrugeuta, 415 F.3d 1252, 1257 (11th Cir. 2005)).  "The decision to alter or amend a judgment is committed to the sound discretion of the district court.  This court will not overturn a denial of a Rule 59 motion absent abuse of discretion."  O'Neal v.

Kennamer, 958 F.2d 1044, 1047 (11th Cir. 1992).

### III. DISCUSSION

Our discussion is divided in four parts. First, we address our framework for the analysis of qualified immunity in the light of the recent decision of the Supreme Court in Pearson v. Callahan, 555 U.S. __, No. 07-751 (Jan. 21, 2009), which affects our discussion in the remaining sections. Second, we address whether the district court erred when it granted summary judgment in favor of Officer Davis. Third, we discuss whether the district court erred when it granted summary judgment in favor of Sheriff Eslinger and the City of Sanford. Fourth, we discuss whether the district court erred when it did not address any allegations of Case's wrongful detention and the illegal retention of Case's property.

*A. The Framework for Analysis of Qualified Immunity.*

The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from

harassment, distraction, and liability when they perform their duties reasonably."

Pearson, 555 U.S. __, No. 07-751, at 6. "[Q]ualified immunity is a privilege that

provides 'an immunity from suit rather than a mere defense to liability.'" Bates,

518 F.3d at 1242 (quoting Saucier v. Katz, 533 U.S. 194, 200–01, 121 S. Ct. 2151,

2156 (2001)). For this reason, the Supreme Court instructs courts to resolve

"immunity questions at the earliest possible stage in litigation." Hunter v. Bryant,

502 U.S. 224, 227, 112 S. Ct. 534, 536 (1991). To invoke qualified immunity, the

official first must establish that he was acting within the scope of his discretionary

authority. Bates, 518 F.3d at 1242. The burden then shifts to the plaintiff to

overcome the defense of qualified immunity. Id.

Recently, the Supreme Court ruled that we are no longer bound to follow the

"inflexible" two-part inquiry for qualified immunity that had been required by

Saucier v. Katz, 533 U.S. at 201–02, 121 S. Ct. at 2156. Pearson, 555 U.S. __, No.

07-751, at 1; id. at 10 ("The judges of the district courts and the courts of appeals

should be permitted to exercise their sound discretion in deciding which of the two

prongs of the qualified immunity analysis should be addressed first in light of the

circumstances in the particular case at hand."). Under Saucier, we first asked a

"threshold question: Taken in the light most favorable to the party asserting the

injury, do the facts alleged show the officer's conduct violated a constitutional

10

right?" 533 U.S. at 201, 121 S. Ct. at 2156. If the answer to that question was affirmative, we next asked "whether the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition." Id.

We may still apply the two-part inquiry from Saucier when that "order of decisionmaking will best facilitate the fair and efficient disposition of [the] case." Pearson, 555 U.S. __, No. 07-751, at 17. In Pearson, the Supreme Court stated, "Our decision does not prevent the lower courts from following the Saucier procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." Id. There are still cases where it "is often beneficial" to answer the first inquiry from Saucier. Id. at 11. "[T]here are cases in which there would be little if any conservation of judicial resources to be had by beginning and ending with a discussion of the 'clearly established' prong." Id. There are other instances when a discussion of whether a constitutional right has been violated would be, at best, fruitless and, at worst, harmful. Id. at 12–15. For instance, "[w]hen qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify." Id. at 13.

Although no longer mandatory, the two-part inquiry of Saucier provides the "better approach to resolving" this appeal. County of Sacramento v. Lewis, 523

U.S. 833, 841 n.5, 118 S. Ct. 1708, 1714 n.5 (1998). Bypassing the first inquiry in our resolution of whether Officer Davis was entitled to summary judgment would not conserve judicial resources because we must still consider the potential liability of Sheriff Eslinger and the City, which hinges on whether Case's rights were violated by Officer Davis. Pearson, 555 U.S. __, No. 07-751, at 17 ("Most of the constitutional issues that are presented in § 1983 damages actions . . . also arise in cases in which that defense is not available, such as . . . § 1983 cases against a municipality . . . ."); see also City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S. Ct. 1571, 1573 (1986). Our record also is developed because this appeal is from a summary judgment, so "[t]he precise factual basis for [Case's] claim . . . [is not] hard to identify." Pearson, 555 U.S. __, No. 07-751, at 13.

*B. Officer Davis Was Entitled to Summary Judgment.*

Case complains that he suffered a false arrest and illegal seizure of property in violation of the Fourth and Fourteenth Amendments. "Under the Fourth Amendment, an individual has a right to be free from 'unreasonable searches and seizures' . . . . [and] an arrest is a seizure of the person." Skop v. City of Atlanta, Ga., 485 F.3d 1130, 1137 (11th Cir. 2007). The "reasonableness" of a seizure or arrest under the Fourth Amendment turns on the presence or absence of probable cause. Id.

12

"A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim[,]" but "[t]he existence of probable cause at the time of arrest . . . constitutes an absolute bar to a section 1983 action for false arrest." Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th Cir. 2004). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201, 121 S. Ct. at 2156. "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." United States v. Gonzalez, 969 F.2d 999, 1002 (11th Cir. 1992).

If a constitutional violation occurred because the officer lacked probable cause, we next consider whether arguable probable cause existed. The officer may still be shielded from liability because his "actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 3508, 2515 (2002) (quoting Harlow, 457 U.S. at 818, 102 S. Ct. at 2738); Draper v. Reynolds, 369 F.3d 1270, 1275 (11th Cir. 2004). "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ."

13

Saucier, 533 U.S. at 201, 121 S. Ct. at 2156. Absent probable cause, an officer is still entitled to qualified immunity if arguable probable cause existed. Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002). "Arguable probable cause exists 'where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest.'" Id. (quoting Scarborough v. Myles, 245 F.3d 1299, 1302 (11th Cir. 2001)).

Case failed to present evidence of a constitutional violation because the record, viewed in the light most favorable to him, establishes that Officer Davis had probable cause to arrest Case and seize his property. "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 U.S. 213, 245 n.13, 103 S. Ct. 2317, 2335 n.13 (1983). Even "seemingly innocent activity" can be the basis for probable cause. Id. "Probable cause does not require overwhelmingly convincing evidence, but only 'reasonably trustworthy information.'" Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996) (quoting Marx v. Gumbinner, 905 F.2d 1503, 1506 (11th Cir. 1990)).

Officer Davis was entitled to rely on allegations of an informant and corroborating evidence as probable cause for a warrantless arrest. See Gates, 462

14

U.S. at 242, 103 S. Ct. at 2334.  We review Officer Davis's conduct based on all the information available to him:

> In determining whether an informant's tip rises to the level of probable cause, we assess the totality of the circumstances. We consider the relevance of factors such as the informant's "veracity," "reliability," and "basis of knowledge."  In addition, the corroboration of the details of an informant's tip through independent police work adds significant value to the probable cause analysis.

Ortega, 85 F.3d at 1525 (citations omitted).

Officer Davis's investigation began with allegations by Stein, an informant, that Case was involved in illegal activity.  Stein informed Officer Davis that Case was in possession of a stolen 1990 Peterbilt truck from which the original identification plate had been removed and replaced with a plate from a 1993 model.  Under the law of Florida, "[i]t is unlawful for any person to have in his or her possession any motor vehicle . . . when the manufacturer's or state-assigned identification number plate or serial plate has been removed therefrom."  Fla. Stat. § 319.30(4).  Stein also provided Officer Davis with information about Case's involvement in removing parts from repossessed vehicles and illegal activity involving forged vehicle titles.  Under Florida law, information supplied by an informant who is not an "ordinary citizen" but has an interest in the investigation must "be independently corroborated to support probable cause."  Dial v. State, 798 So. 2d 880, 883 (Fla. Dist. Ct. App. 2001).

15

As the district court determined, the record establishes that Officer "Davis was able to corroborate several of Stein's statements through his own investigation." The evidence, taken in the light most favorable to Case, establishes that Officer Davis conducted an investigation, interviewed independent witnesses, including the employees of the trophy shop and tire service station, and directly observed tires and rims believed to be stolen property. Officer Davis obtained evidence that corroborated Stein's allegation that Case was involved with the alteration of identification number plates and removal and substitution of parts on several vehicles. This evidence also corroborated Stein's allegation that Case possessed stolen tires and rims.

Because the statements of Stein and the other witnesses, along with the physical evidence of substituted identification number plates and the presence of allegedly stolen tires and rims on Case's property, were "sufficient to warrant a reasonable belief that [Case] had committed . . . a crime[,]" including larceny, possession of a vehicle with an altered identification number, or passing a forged vehicle title, we conclude that Officer Davis had probable cause to arrest Case and seize the related property. No constitutional violation occurred. See Gonzalez, 969 F.2d at 1002. Absent evidence that a constitutional violation occurred, we need not consider whether the alleged violation was clearly established; that is, we

16

need not consider whether Officer Davis lacked even arguable probable cause. Saucier, 533 U.S. at 201, 121 S. Ct. at 2156. Officer Davis is immune from suit and entitled to summary judgment in his favor.

C. *Sheriff Eslinger and the City of Sanford Were Entitled to Summary Judgment.*

Case argues that Sheriff Eslinger and the City established customs and policies that led to Officer Davis's conduct, but the district court concluded that, absent a violation of Case's constitutional rights by Officer Davis, both Sheriff Eslinger and the City, as Davis's principals, are entitled to summary judgment. We agree with the district court. The Supreme Court has explained, "[N]either Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S. Ct. 2018 (1978), nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm." Heller, 475 U.S. at 799, 106 S. Ct. at 1573; see also Rooney v. Watson, 101 F.3d 1378 (11th Cir. 1996) (unnecessary to review argument of failure to train by sheriff when deputy did not violate a constitutional right). We affirm the summary judgment in favor of Sheriff Eslinger and the City.

D. *The District Court Did Not Err When It Did Not Address Case's Allegations of Wrongful Detention and Illegal Retention of His Property.*

Case argues that the district court erred when it entered summary judgment

17

without addressing whether Case's detention following the arrest and the retention of his seized property were unlawful. Case's complaint contained six counts, all under the Fourth Amendment, that alleged false arrest and illegal seizure by Officer Davis, Sheriff Eslinger, and the City of Sanford. In each of the counts for false arrest, Case alleged that "[t]his is an action for false arrest and detention[,]" and in each count for illegal seizure, Case alleged that "[t]his is a cause of action for unlawful seizure and retention of personal property."

When a party moves for final, not partial, summary judgment, we have stated that "it [becomes] incumbent upon the [nonmovant] to respond by, at the very least, raising in their opposition papers any and all arguments or defenses they felt precluded judgment in [the moving party's] favor." Johnson v. Bd. of Regents, 263 F.3d 1234, 1264 (11th Cir. 2001). A party "cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to develop for the district court at the time of the summary judgment motions." Id. When a defendant has moved for summary judgment on the basis of qualified immunity, "the plaintiff may not rely on the facts contained in the complaint, but must raise genuine issues of material fact to counter the facts supporting a defendant's summary judgment motion based on qualified immunity." Hutton v. Strickland, 919 F.2d 1531, 1536–37 (11th Cir. 1990). Failure to do so may result

18

in waiver or abandonment of the issue.  See Johnson, 263 F.3d at 1264.

When Officer Davis, Sheriff Eslinger, and the City moved for summary judgment on "all claims" and argued that they were entitled to summary judgment against Case's complaints of false arrest and illegal seizure, Case was obliged to explain why the defendants were not entitled to qualified immunity about his detention and the retention of his property.  Although Davis, Eslinger, and the City did not address issues of Case's detention and the retention of his property, Case could have raised those issues.  See Hutton, 919 F.2d at 1536.  Because Case failed to do so, he "cannot readily complain about the entry of a summary judgment order that did not consider an argument [he] chose not to develop for the district court at the time of the summary judgment motions."  Johnson, 263 F.3d at 1264.

Case first raised the issues of his detention and the retention of his seized property in a post-judgment motion, under Federal Rule of Civil Procedure 59, but our precedents do not countenance his failure to raise these issues sooner:

> [Rule 59 m]otions to amend should not be used to raise arguments which could, and should, have been made before the judgment was issued.  Denial of a motion to amend is especially soundly exercised when the party has failed to articulate any reason for the failure to raise the issue at an earlier stage in the litigation.

O'Neal, 958 F.2d at 1047 (internal quotation marks and citations omitted).  The district court did not abuse its discretion when it denied Case's post-judgment

19

motion.

Even if Case had raised the issue of his detention sooner, his argument still would have failed. Case alleged that he was wrongfully detained because he was not released from jail until approximately seven hours after his bond was posted. Detention of a suspect beyond forty-eight hours without a determination of probable cause violates an individual's rights under the Fourth Amendment, and if the determination is made within forty-eight hours of arrest, the complaint must prove that his determination was unreasonably delayed. County of Riverside v. McLaughlin, 500 U.S. 44, 56, 111 S. Ct. 1661, 1670 (1991). Case was neither detained beyond forty-eight hours nor did he allege that his probable cause determination was unreasonably delayed.

Case argues that he was detained based on a false arrest, but that argument is relevant to a claim of false imprisonment under the Fourteenth Amendment, Ortega, 85 F.3d at 1527, which fails because Case's arrest was supported by probable cause. Our precedents establish that a claim of false imprisonment, absent misidentification, depends on an absence of probable cause:

> A false imprisonment claim under section 1983 is based on the protection of the Fourteenth Amendment against deprivations of liberty without due process of law. Where a police officer lacks probable cause to make an arrest, the arrestee has a claim under section 1983 for false imprisonment based on a detention pursuant to that arrest. . . . Additionally, . . . under certain circumstances, a

20

> detention following a valid arrest may present a viable section 1983 claim where the detainee protests the detention on the basis of misidentification.

Id. (citations omitted). Because Officer Davis had probable cause to arrest him, Case's complaint of false imprisonment fails.

Case's complaint of wrongful retention of property suffers from similar problems of pleading and proof. In his complaint, Case alleges that "Seminole County, Sanford, and [Officer] Davis wrongly disposed of the personal property they took from Case and Associated, including the Peterbuilt tractor, the six tire rims, as well as Case's money and credit cards." Case included these allegations in the illegal seizure counts of his complaint and asserts that they state an independent constitutional violation. "[C]ontinued retention by police officers of allegedly stolen property, as distinct from the initial seizure of that property, may in some circumstances be a constitutional deprivation." Barker v. Norman, 651 F.2d 1107, 1131 (5th Cir. 1981).

Case argues that the retention of his seized property violated the Fourth Amendment, but we disagree because Officer Davis had probable cause to seize Case's property. Case relies on Bruce v. Beary, 498 F.3d 1232 (11th Cir. 2007), in which we explained that, if an initial seizure of property by officers constituted an illegal seizure then "[c]ertainly, the continued retention of . . . [that] property . . .

21

would be a constitutional violation as well." Id. at 1248. We did not say that the retention of legally seized property violates the Fourth Amendment. In Byrd v. Stewart, we distinguished a complaint under the Fourth Amendment "that the search and seizure itself was unlawful," from a complaint "that the officers have failed to return the items seized without due process of law," which is a cause of action under the Fourteenth Amendment. 811 F.2d 554, 554–55 (11th Cir. 1987).

A complaint of continued retention of legally seized property raises an issue of procedural due process under the Fourteenth Amendment, but Case did not raise that issue in the district court. See Lindsey, 936 F.2d at 561. Case did not state a claim of procedural due process in his complaint, and he did not raise the issue in response to the motion for summary judgment. "As a general rule, we will not entertain issues or arguments on appeal that were not fairly presented to the district court." Hill v. Jones, 81 F.3d 1015, 1020 (11th Cir. 1996).

Even if Case had stated a claim that the retention of the legally seized property violated the Fourteenth Amendment, that claim would fail because Florida provided Case an adequate postdeprivation remedy. "Even assuming the continued retention of plaintiffs' personal property is wrongful, no procedural due process violation has occurred if a meaningful postdeprivation remedy for the loss is available." Lindsey, 936 F.2d at 561 (internal quotation marks omitted); see

22

Hudson v. Palmer, 468 U.S. 517, 104 S. Ct. 3194 (1984); Parratt v. Taylor, 451 U.S. 527, 101 S. Ct. 1908 (1981). "Hudson made clear that as long as some adequate postdeprivation remedy is available, no due process violation has occurred." Lindsey, 936 F.2d at 561. We have recognized that "a civil cause of action for wrongful conversion of personal property" under state law is a sufficient postdeprivation remedy when it extends to unauthorized seizures of personal property by state officers. Id. Under the law of Florida, "law enforcement officers may be liable for conversion" for the seizure or retention of personal property. See E.J. Strickland Constr., Inc. v. Dep't of Agric. & Consumer Servs. of Fla., 515 So. 2d 1331, 1335 (Fla. Dist. Ct. App. 1987). "Because [Case] has had access to an adequate postdeprivation remedy, no procedural due process violation has occurred." Lindsey, 936 F.2d at 561.

## IV.  CONCLUSION

The summary judgment in favor of Officer Davis, Sheriff Eslinger, and the City of Sanford is

**AFFIRMED.**

23