[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 2, 2009
THOMAS K. KAHN
CLERK

No. 08-15519
Non-Argument Calendar

_____

D. C. Docket No. 07-21507-CV-ASG

JERMAINE WILLISTON ATTERBURY,

Plaintiff-Appellant,

versus

CITY OF MIAMI POLICE DEPARTMENT,
CITY OF MIAMI, FLORIDA,
DETECTIVE LEONEL TAPANES,
OFFICER STANLEY WINFREY,
DADE COUNTY STATE ATTORNEY OFFICE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 2, 2009)

Before TJOFLAT, BIRCH and DUBINA, Circuit Judges.

PER CURIAM:

Plaintiff-appellant Jermaine Williston Atterbury ("Atterbury") appeals pro se the district court's order granting summary judgment in favor of defendant-appellee Detective Leonel Tapanes ("Det. Tapanes"). Atterbury argues that the district court erred in dismissing his 42 U.S.C. § 1983 claims for false arrest, false imprisonment, and malicious prosecution because Det. Tapanes arrested him for armed robbery without probable cause. We agree with the district court that actual probable cause existed at the time of Atterbury's arrest and that Det. Tapanes was entitled to qualified immunity. Accordingly, we AFFIRM.

## I. BACKGROUND

We state the facts in the light most favorable to Atterbury. On 15 June 2004, Sarah Castro Berriz ("Berriz") notified Officer Stanley Winfrey of the Miami Police Department that she had been robbed at gunpoint. R1-1, Exh. A, Police Report at 1. According to Officer Winfrey's report, Berriz had returned home from the bank when a black male approached her car. Id. at 3. The man pointed a pistol at her and demanded her purse. Id. After a struggle, the assailant wrested the purse from Berriz and fled in a dark blue "S.U.V." Id. She described the perpetrator as being 5' 11", weighing 200 pounds, and wearing a black t-shirt and blue jean shorts. Id. at 2.

2

The police found Berriz's purse in a blue Ford Escape the afternoon of the robbery. R2-80, Exh. C at 3-4.[1] The occupants of the car fled but dropped two firearms at the scene. Id. at 3. Det. Tapanes of the Miami Police Department was assigned to the case and showed Berriz a photograph of the vehicle, which she identified as the one used in the robbery. Id. at 4. Through his investigation, Det. Tapanes learned that the vehicle was in the care of Alton Davis ("Davis") at the time of the robbery. Id. That night, Berriz discovered an ATM receipt from a store in her purse. R2-81 at 28-29. The ATM receipt indicated that an incorrect PIN had prevented any money from being withdrawn. R2-80, Exh. C at 4. Det. Tapanes obtained the store's video surveillance, which depicted a black male wearing a shirt with the number "80" trying to extract money from the ATM while another black male wearing a black t-shirt and blue jean shorts stood by. R2-80 at 3.

On 24 June 2004, Det. Tapanes interviewed Davis, who was incarcerated in Broward County. R2-80, Exh. C at 4. Davis informed Det. Tapanes that he had been casing different banks with a black man known to him as Jermaine and another black man known as Seth. Id. After spotting Berriz at a bank, they followed her until Jermaine robbed her at gunpoint. Id. Davis confirmed that he

---

[1] Documents R2-80 through R2-85 are located in Exh. Folder 2.

3

and Jermaine were the individuals in the video surveillance photographs of the ATM. Id. Davis also identified one of the handguns retrieved by the police as the one Jermaine had used during the robbery. Id.

Upon further research, Det. Tapanes discovered that Jermaine Atterbury, also known as Terrance Jacobs, was wanted by the West Palm Beach Police Department for various armed robberies. Id. at 5; R2-80, Exh. D. On 14 July 2004, Det. Tapanes conducted a videotaped interview of Atterbury. R2-80, Exh. E. After waiving his Miranda[2] rights, Atterbury confessed to snatching Berriz's purse but asserted that Davis was the one holding the gun. Id. at 28-32, 63-64.

On 3 August 2004, Det. Tapanes showed Berriz the video photographs of the ATM and a photo line-up of six black males' faces. R2-80 at 4; R2-80, Exh. G. Berriz positively identified Atterbury from the photo line-up. R2-80 at 4. Based on his investigation, Det. Tapanes obtained an arrest warrant for Atterbury on 4 August 2004. R2-80 at 5.

Berriz later testified in a deposition, taken in January 2007, that the robber had emerged from the passenger side of the vehicle and a driver had remained in the car during the robbery. R2-81 at 13. Although Berriz definitely remembered the assailant had worn a black short-sleeved shirt, she was less certain about his

---

[2]Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).

4

other clothing, stating that he also had on "a black pair of slacks, I think." Id. at 16. Berriz was seventy percent certain that the person she had identified in the photo line-up was her assailant. Id. at 33.

The state subsequently dismissed the case against Atterbury in April 2007. R1-1, Exh. A at 1. Although the assigned prosecutor did not believe Atterbury was innocent, he decided to nolle pros the case because: (1) Berriz no longer wanted to testify and was not completely certain about her previous identification, (2) locating witnesses and evidence had been difficult, and (3) the prosecutor believed Atterbury's taped interview would likely be excluded at trial. R2-83 at 8-13.

Atterbury subsequently filed this § 1983 complaint in June 2007 against Det. Tapanes, Officer Winfrey, the Miami Police Department, and the Dade County State Attorney's Office. R1-1. Pursuant to the magistrate judge's report and recommendation, the district court dismissed the claims against all defendants except for Det. Tapanes. R1-44 at 5. Det. Tapanes then filed a motion for summary judgment on Atterbury's remaining claims for false arrest, false imprisonment, and malicious prosecution. R2-79. The magistrate judge recommended that his motion be denied, primarily on grounds that Det. Tapanes lacked either actual or arguable probable cause for Atterbury's arrest. R2-96 at 15, 17, 19.

The district court rejected the magistrate judge's report and recommendation. R2-120 at 1. The district court found that "[Det.] Tapanes has shown that the arrest warrant was supported by actual probable cause, not just arguable probable cause." Id. at 11. Because the absence of probable cause was a required element of all three of Atterbury's claims, the district court concluded that Det. Tapanes was entitled to qualified immunity as to each claim. Id. at 11-13. The court therefore granted summary judgment in favor of Det. Tapanes. Id. at 13. This appeal followed.

## II. DISCUSSION

We review de novo a district court's decision to grant summary judgment based on qualified immunity. See Case v. Eslinger, ___ F.3d ___, No. 08-10657, 2009 WL 196842, at *3 (11th Cir. Jan. 29, 2009). We construe all facts in the plaintiff's favor so that material issues of disputed fact do not affect the determination of whether qualified immunity applies. See id. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. Proc. 56(c).

Under the doctrine of qualified immunity, government officials are not liable for civil damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v.

6

Callahan, 555 U.S. ___, 129 S. Ct. 808, 815 (2009) (quotation marks and citation omitted). Qualified immunity is not merely a defense to liability but rather an immunity from a lawsuit. See id. at ___, 129 S. Ct. at 815. Once an official establishes that he was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to overcome the privilege of qualified immunity. See Eslinger, 2009 WL 196842, at *4. To do so, the plaintiff must prove: (1) that the officer violated a constitutional right and (2) that this right was clearly established at the time. See id. We have discretion to determine in what order we analyze the two prongs of the plaintiff's burden of proof. See Pearson, 555 U.S. at ___, 129 S. Ct. at 818.

Atterbury does not contest the district court's finding that Det. Tapanes was engaged in a discretionary function when he performed the acts at issue. Atterbury thus bears the burden of establishing that Det. Tapanes violated a clearly established constitutional right. See Eslinger, 2009 WL 196842, at *4. Atterbury contends that Det. Tapanes violated his Fourth and Fourteenth Amendment rights by falsely arresting and imprisoning him, and by maliciously prosecuting him.

All three of Atterbury's claims hinge on whether Det. Tapanes had probable cause to arrest him. The existence of probable cause at the time of arrest absolutely bars a § 1983 claim for false arrest under the Fourth Amendment. See

id. at *5.  Likewise, if a police officer has probable cause to make an arrest, the arrestee may not sue for false imprisonment under § 1983 based on a detention pursuant to that arrest.  See id. at *9.  Finally, to prevail on a § 1983 malicious prosecution claim, a plaintiff must prove "(1) the elements of the common law tort of malicious prosecution, and (2) a violation of [his] Fourth Amendment right to be free from unreasonable seizures."  Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004).  One of the six requirements for a common law tort of malicious prosecution under Florida law is "an absence of probable cause for the original proceeding."[3]  Id.

Probable cause to arrest may be actual probable cause or arguable probable case.  See Eslinger, 2009 WL 196842, at *6 ("Absent probable cause, an officer is still entitled to qualified immunity if arguable probable cause existed.").  Actual probable cause exists when the facts and circumstances within the police officer's knowledge "warrant a reasonable belief that the suspect had committed or was committing a crime."  Id. at * 5.  This knowledge may be garnered from an informant's allegations and corroborating evidence.  See id. at *6.  The evidence of

---

[3]The six elements are: "(1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding."  Id.

criminal activity need not be overwhelming. See id. "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Id. (quotation marks, brackets, and citation omitted). Thus, an officer must have something more than mere suspicion but he may have less than convincing proof. See Durruthy v. Pastor, 351 F.3d 1080, 1088 (11th Cir. 2003). Arguable probable cause to arrest exists where a reasonable officer in the identical circumstances could have believed that probable cause existed. See Eslinger, 2009 WL 196842, at *6.

We agree with the district court that Det. Tapanes had actual probable cause to arrest Atterbury. Even when viewed in the light most favorable to Atterbury, the evidence established that Det. Tapanes knew the following information. Berriz had been robbed at gunpoint by a black male who fled in a blue vehicle. Berriz's stolen purse was retrieved from a vehicle matching Berriz's description and identified by Berriz as the vehicle used in the robbery. Two black males had been captured on video surveillance attempting to use Berriz's ATM card. One of the men in the video was wearing clothing that matched the description Berriz gave to Officer Winfrey. The other man in the video, Alton Davis, confirmed the details of Berriz's robbery and positively identified himself and "Jermaine" as the individuals in the video. Davis also identified a gun found near the blue vehicle as

9

the weapon "Jermaine" used to rob Berriz. Det. Tapanes confirmed that "Jermaine" was Jermaine Atterbury and Berriz further corroborated Davis' statements by identifying Atterbury as the perpetrator from a photo line-up. Finally, Atterbury admitted to Det. Tapanes that he was involved in the armed robbery of Berriz. This evidence was more than sufficient to warrant a reasonable belief that Atterbury had committed the armed robbery of Berriz. Accordingly, Det. Tapanes' arrest of Atterbury was founded on probable cause.

Atterbury raises several objections to this evidence of probable cause. First, Atterbury contends that Davis could not correctly identify him from the ATM video photographs because they were grainy and did not clearly reveal the men's faces. Atterbury also submits that Davis was mentally unstable and untrustworthy given that he was a suspect himself and he was promised favorable treatment for cooperating. Second, Atterbury maintains that his statement was unsworn and obtained in violation of his Miranda rights.[4] Third, Atterbury challenges the reliability of the victim's identification of him from the photo line-up and notes her failure to mention his two gold teeth. He further points out that although Officer

---

[4]To the extent Atterbury is attempting to raise a separate constitutional violation of his right to an attorney, we find this claim has been waived by his failure to raise it in his complaint or amended complaint. See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

Winfrey's report stated the suspect wore blue jean shorts, Berriz testified in her 2007 deposition that she thought her assailant wore black pants, which matches the clothing worn by another alleged accomplice named Seth.

None of these arguments vitiate a finding of probable cause. Det. Tapanes was entitled to rely on the allegations of Davis because they were corroborated by other evidence, including the victim's version of events and Det. Tapanes' own investigation. See Eslinger, 2009 WL 196842, at *7 (concluding that an arrest and seizure of related property was supported by probable cause where the police officer's independent investigation corroborated an informant's tip). As for Atterbury's confession and the victim's identification, probable cause "need not reach the same standard of conclusiveness and probability as the facts necessary to support a conviction." Durruthy, 351 F.3d at 1088 (quotation marks and citation omitted). Thus, the possibility that certain evidence may be excluded at trial does not mean Det. Tapanes could not reasonably rely on that evidence in determining whether Atterbury had committed the armed robbery.

Finally, any discrepancies in the victim's description of her assailant's clothing are not dispositive. Whether the victim correctly remembered in 2007 what the perpetrator wore during the 2004 robbery is not relevant to our assessment of probable cause. This is because we are required to review Det.

11

Tapanes' knowledge at the time of the arrest. See Eslinger, 2009 WL 196842, at *5. At the time of Atterbury's arrest, Det. Tapanes knew that the victim had reported to Officer Winfrey on the day of the robbery that her assailant had worn blue jean shorts, not black pants.

Based on our conclusion that Det. Tapanes had actual probable cause to arrest Atterbury, the absence of a constitutional violation forecloses Atterbury's claims of false arrest and false imprisonment. See id. at *5, 9. The existence of probable cause also defeats the claim of malicious prosecution. See Kjellsen v. Mills, 517 F.3d 1232, 1237 (11th Cir. 2008). Because Atterbury's arrest warrant was supported by actual probable cause, Atterbury fails to satisfy the required element that the original proceeding lacked probable cause. See Kingsland, 382 F.3d at 1234. There is also no evidence that negated that probable cause, thereby justifying the continued prosecution of Atterbury. See Kjellsen, 517 F.3d at 1238 ("Probable cause is required to *continue* a prosecution, not just to arrest a defendant or to institute a prosecution."). Accordingly, Det. Tapanes is immune from suit on all of Atterbury's § 1983 claims and entitled to summary judgment.

## III. CONCLUSION

The district court correctly determined that Atterbury's arrest warrant and continuing detention were supported by actual probable cause. Det. Tapanes was

therefore entitled to qualified immunity on Atterbury's § 1983 claims of false arrest, false imprisonment, and malicious prosecution.  Accordingly, we AFFIRM the district court's grant of summary judgment in favor of Det. Tapanes.

**AFFIRMED.**