[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 23-11302

Non-Argument Calendar

————————————————

AISHLY FOY,

Plaintiff-Appellee,

*versus*

SHERIFF OF JEFFERSON COUNTY, ALABAMA,
ADAM ENNIS,
KATELYN PAYNE,
DAVID AGEE,
TERRY SCOTT,

Defendants-Appellants,

2                    Opinion of the Court                    23-11302

NURSE FLETCHER, et al.,

                                                          Defendants.

————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:19-cv-01887-JHE

————————————

Before NEWSOM, GRANT, and HULL, Circuit Judges.

PER CURIAM:

Plaintiff Aishly Foy filed this action against officials at the Jefferson County Jail alleging a variety of claims based on her treatment at the jail after her arrest. A magistrate judge granted in part and denied in part the defendants' motion for summary judgment based on qualified immunity.[1] Three defendants, Sheriff Mark Pettway, Deputy Adam Ennis, and Deputy Katelyn Payne (collectively, "defendants"), appeal that ruling.[2]

---

[1] The parties consented under 28 U.S.C. § 636(c) to have a magistrate judge conduct all the proceedings of the case.

[2] In a prior order, this Court (1) concluded that two defendants, Deputy David Agee and Sergeant Terry Scott, prevailed in the district court and thus lacked appellate standing and (2) dismissed those defendants from this appeal.

On appeal, the defendants argue that the magistrate judge erred by concluding that: (1) Deputies Ennis and Payne were not entitled to qualified immunity as to Foy's 42 U.S.C. § 1983 excessive force claim and (2) Sheriff Pettway was not entitled to qualified immunity as to Foy's disability-related claims brought under § 1983, Title II of the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act.

After review, as to Foy's excessive force claim, we affirm the denial of summary judgment as to Deputies Ennis and Payne because fact issues exist as to whether purely gratuitous and retributive force was used against Foy after she was secured in a holding cell (given Foy's version of events in her deposition).

We also affirm the magistrate judge's limited ruling that Foy did not sue Sheriff Pettway individually but only in his official capacity and thus the qualified immunity defense to *individual* liability was inapplicable. The magistrate judge did not address the summary judgment issues of whether Foy failed to show (or even state) any viable disability-related claims, and we lack jurisdiction to address them in this interlocutory appeal. On remand, the magistrate judge shall address in the first instance whether Sheriff Pettway was entitled to summary judgment as to Foy's disability-related claims against Sheriff Pettway in his official capacity based on this evidentiary record.

## I.  BACKGROUND

### A.    Foy's Counseled First Amended Complaint

Foy was represented by counsel when she filed this action and her first amended complaint.  As discovery began, however, Foy fired her counsel and asked to proceed *pro se*.  Foy's counsel moved to withdraw.  After a hearing, the magistrate judge granted counsel's motion to withdraw, and Foy proceeded *pro se*.

### B.    Defendants' Motion for Summary Judgment

On December 22, 2021, the defendants took Foy's deposition.

On March 15, 2022, the defendants filed a joint motion for summary judgment, arguing they were entitled to qualified immunity from all of Foy's federal claims.  As to Foy's excessive force claim, the defendants' motion argued Foy had not shown a violation of her constitutional rights or that the right was clearly established.  As to Foy's various disability-related claims, the defendants' motion argued that Foy had not shown a violation of the ADA or the Rehabilitation Act and that Sheriff Pettway was also entitled to qualified immunity.

To support their motion, the defendants filed Foy's deposition, in which she outlined her version of events.  We recount Foy's testimony, which the magistrate judge properly considered.

## C.    Foy's Deposition

In 2013, a psychiatrist diagnosed Foy with multiple personality disorder, and she takes prescription medication for anxiety and major depression. Shortly before her arrest, Foy was discharged from a medical facility and prescribed Xanax to keep her calm until she could get to another facility that could treat her major psychological disorders. On the morning of her arrest, Foy had the full Xanax prescription in her purse, but she had not yet taken any medication because she was going to work.

After being booked into the jail, Foy met with nurse Gay to discuss Foy's medical conditions and why Foy had a prescription bottle in her purse. Foy explained that she was just discharged by a psychiatrist, who prescribed the Xanax for an untreated psychological disorder.

As Foy spoke, nurse Gay muttered, "This black junkie." Foy admitted that she responded by grabbing nurse Gay, dragging her out of the room, and hitting her. Two unidentified deputies separated Foy from nurse Gay, placed her in a holding cell, and left.

The crux of this case involves what happened next in the holding cell. About five minutes later, five white deputies (three male and two female) and Sergeant Scott returned to the holding cell. The first deputy to enter walked in and immediately grabbed Foy's braids and slammed her head against the wall. Foy "was out of it" and slid down the wall to the floor, where the first deputy kicked Foy in the face. The other deputies began to beat Foy, too, and they called her a "black monkey, stupid black bitches," and one

said, "You put your hand on one of ours, we going to show you." Foy was knocked unconscious from the beating, had injuries all over her body, and her eyes were swollen shut.

Importantly though, Foy denied, *inter alia*, kicking or hitting any of the deputies during this time in the holding cell.

Foy testified that Deputy Payne (a defendant here) was one of the female deputies who beat her. Foy said she did not know Deputy Ennis (another defendant), but Foy was "positive" he was one of the male deputies in the holding cell based on excessive force statements the deputies gave after the incident (that defendants produced in discovery).

Later, Foy was escorted to cell A7 in the disciplinary block. There, Foy was stripped, put in "a crazy jacket," and placed on suicide watch. Foy does not recount any beating in cell A7. However, Foy complains that she did not receive medical treatment for several days. After Foy filed a grievance, Captain David Agee "locked [Foy] down" by placing her "on Max 1," which caused her depression to kick in, and she "completely shut down" and did not eat or drink. At that point, Foy could not make phone calls or "touch the tablet" anymore. When Foy began vomiting and her heart rate rose, a nurse called the "EMT" to "send her out" to the hospital.

### D. Defendants' Affidavits

The defendants also filed sworn affidavits from Deputies Payne and Ennis, who were assigned to the corrections division at the jail. The deputies denied that they or any other deputies at the

23-11302          Opinion of the Court          7

jail kicked, beat, or threatened Foy in the holding cell as she claimed.

Deputy Payne averred that Foy kicked her during the altercation, continued to fight the deputies as they escorted Foy to the holding cell, and was not bleeding or unconscious in the holding cell, that Payne brought a nurse to the holding cell to check on Foy, and that Foy was not deprived of medical care. Deputy Payne, however, does not deny entering and being present in the holding cell.

Deputy Ennis averred that he was not one of the deputies who escorted Foy to her cell (although which cell is not clear) and that he was not present when Foy was stripped and placed in a suicide vest (which would have been cell A7 in the disciplinary block). Deputy Ennis, however, also does not specifically deny entering or being present in the holding cell.

Sheriff Pettway averred that he: (1) had no personal interactions with Foy; (2) did not witness any use of excessive force or violations of any policies when the deputies intervened in the altercation between Foy and nurse Gay; (3) did not refuse Foy food or medical treatment; (4) did not violate any ADA policies, fail to accommodate Foy, or discriminate against Foy because of her disabilities; (5) did not witness or become aware of any ADA violations by the deputies in their interactions with Foy; and (6) did not fail to train, monitor, and discipline employees with regard to their handling of inmates with disabilities.

Foy, *pro se*, did not file a response to the defendants' motion for summary judgment.

### E.    Summary Judgment Order

On March 20, 2023, the magistrate judge entered an order granting in part and denying in part the defendants' summary judgment motion.  We review only the portions of that order pertinent to Deputies Payne and Ennis and Sheriff Pettway, the three appellants in this interlocutory appeal.

At the outset, the magistrate judge acknowledged that (1) he could not grant the defendants' motion merely because it was unopposed, and (2) he was required to consider the motion on the merits, review the evidence, and determine if the defendants had met their summary judgment burden under Rule 56.

As to Foy's excessive force claim (Count One), the magistrate judge concluded that Deputies Payne and Ennis had "not met their summary judgment burden."[3]  The magistrate judge observed that "Foy's description of the encounter is sharply at odds" with the deputies' description.  The magistrate judge determined that "[v]iewed in the light most favorable to Foy, the deputies reentered her holding cell to beat her in revenge for

---

[3] Foy's first amended complaint alleged her excessive force claims were brought under the Fourth Amendment "as incorporated against the states by the Fourteenth Amendment."  The magistrate judge found it unnecessary to determine whether Foy's claims were properly brought under the Fourth Amendment or the Fourteenth Amendment because the same objective standard of reasonableness applied to both types of excessive force claims.

getting into a fight with Nurse Gay" and did not "provide any explanation or justification for this use of force."

The magistrate judge concluded each of the factors in *Graham v. Connor*, 490 U.S. 386 (1989), weighed against the reasonable use of force and that "there appears to have been no need for the use of force at all." The magistrate judge emphasized that under Foy's version of events: (1) Foy was separated from nurse Gay and in the holding cell and thus did not pose an active threat or security problem; (2) the deputies' use of force inside the holding cell "was gratuitous and retributive"; and (3) Foy was bruised and knocked unconscious.

The magistrate judge noted that Deputies Payne and Ennis did not "raise as a defense Foy's inability to identify which officers were responsible for which specific portion of the alleged beating." The magistrate judge pointed out, *inter alia*, that the deputies did not deny being present in the holding cell with Foy.

As to qualified immunity, the magistrate judge concluded Foy's right to be free from excessive force in the holding cell was clearly established, among other reasons, because the deputies' alleged conduct—beating Foy for no law enforcement reason or disciplinary purpose "but as payback"—was a constitutional violation that "would have been obvious to a reasonable officer."

The magistrate judge acknowledged that Foy had not responded to the deputies' summary judgment motion. But under

Foy's version of events in the evidentiary record, the deputies had not carried their burden at summary judgment.[4]

As for Foy's disability claims against Sheriff Pettway (Counts Three and Four), the magistrate judge stressed that Sheriff Pettway was sued only *in his official capacity* and qualified immunity was not a defense to official capacity claims under either the ADA or the Rehabilitation Act. Additionally, the magistrate judge observed that the summary judgment motion conflated "whether Foy has established a constitutional violation based on denial of medical care with (1) whether she has satisfied the standards of the ADA or the Rehabilitation Act or (2) whether she has adequately supported official capacity § 1983 claims based on the other purported violations she alleges." The magistrate judge found that neither of these arguments entitled Pettway to summary judgment on Counts Three and Four.

The defendants filed this interlocutory appeal challenging the magistrate judge's denial of qualified immunity as to Counts One, Three, and Four.

---

[4] In Count Two of her first amended complaint, Foy alleged conditions-of-confinement claims against multiple defendants, including Deputies Payne and Ennis. In a prior order, the magistrate judge dismissed these claims as to Deputies Payne and Ennis because the summary judgment record did not show that either deputy had an opportunity to intervene in any of the events alleged in Count Two.

## II.  STANDARD OF REVIEW

Ordinarily we do not have jurisdiction to review the denial of a motion for summary judgment, but we have jurisdiction to review the denial of qualified immunity under the collateral order doctrine. *Williams v. Aguirre*, 965 F.3d 1147, 1156 (11th Cir. 2020). In a prior order dated October 24, 2024, this Court determined that we have jurisdiction to hear the defendants' interlocutory appeal pursuant to the collateral order doctrine. *See Foy v. Sheriff of Jefferson Cnty., Ala.*, No. 23-11302, 2024 WL 4564182, at *2 (11th Cir. Oct. 24, 2024) (unpublished).

We review *de novo* the denial of summary judgment based on qualified immunity, "viewing the facts in the light most favorable to the nonmovant." *Williams*, 965 F.3d at 1156 (quotation marks omitted). Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see also* Fed. R. Civ. P. 56(a).

## III.  DISCUSSION

### A.  Qualified Immunity

To be entitled to qualified immunity, the defendant must first establish that he was acting within the scope of his discretionary authority when the allegedly wrongful conduct occurred. *Christmas v. Harris Cnty., Ga.*, 51 F.4th 1348, 1354 (11th Cir. 2022). If the defendant does so, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* To overcome the defendant's defense of qualified immunity, the

plaintiff must show both: (1) that the defendant violated a constitutional right; and (2) that the right violated was clearly established. *Id.*

## B.    Plaintiff's Failure to Respond in the District Court

The two defendant deputies argue that the magistrate judge erred in concluding they were not entitled to qualified immunity on Foy's excessive force claim because Foy had the burden to show (1) a constitutional violation and (2) a clearly established right but (3) Foy did not respond to their summary judgment motion.

"When a defendant has moved for summary judgment on the basis of qualified immunity, the plaintiff may not rely on the facts contained in the complaint, but must raise genuine issues of material fact to counter the facts supporting a defendant's summary judgment motion." *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) (quotation marks omitted). When the plaintiff fails to do so, the district court "may grant summary judgment only if the motion and supporting materials—including the facts considered undisputed . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

"Thus, the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). In considering the merits, the district court is not required to "sua sponte review all of the evidentiary materials on file." *Id.* But the district court must "[a]t

the least . . . review all of the evidentiary materials submitted in support of the motion for summary judgment" to "ensure that the motion itself is supported by evidentiary material." *Id.*; *see also Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (confining our review to the materials submitted by the defendants in support of their unopposed motion for summary judgment to determine whether those materials demonstrate the absence of a genuine dispute of fact).

Here, the defendant deputies fail to recognize that the entry of summary judgment cannot be based solely on the fact that their motion was unopposed. *See One Piece of Real Prop. Located at 5800 SW 74th Ave.*, 363 F.3d at 1101. The magistrate judge was obliged to, and did, review the materials the defendants themselves submitted with their summary judgment motion, including Foy's deposition, to determine whether those materials demonstrated *the absence* of a genuine dispute of fact. *See id.*; *Mann*, 588 F.3d at 1303.

There is no factual dispute that Deputies Payne and Ennis were acting within their discretionary authority as sheriff's deputies assigned to the jail. But, for summary judgment purposes we must accept as true Foy's version of events in her deposition (even though contradicted by the defendants' affidavits). According to Foy's testimony, five minutes after Foy was placed in the holding cell and was no longer resisting, the deputies reentered the holding cell and beat and kicked Foy to the point of

unconsciousness in retaliation for her earlier attack on nurse Gay in the nurse's office.

This Court has long recognized that a jailer's continued use of force against a compliant or restrained inmate is constitutionally excessive. *See Piazza v. Jefferson Cnty., Ala.*, 923 F.3d 947, 953 (11th Cir. 2019) (citing cases decided in 1987, 2005, and 2008). Moreover, this legal principle applies with such "obvious clarity" here, where the alleged force was gratuitous and malicious, such that no reasonable officer in the deputies' shoes could have believed the force used was constitutionally permissible. *See Taylor v. Riojas*, 592 U.S. 7, 8-9 (2020); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Accordingly, we find no error in the magistrate judge's denial of qualified immunity as to Foy's excessive force claim against Deputies Payne and Ennis at this summary judgment stage. Nothing herein expresses any opinion on the ultimate merits of the case. Our narrow ruling is that on the instant record, fact issues exist precluding summary judgment for Deputies Payne and Ennis at this juncture.

## C.    Disability Claims Against Sheriff Pettway

Counts Three and Four of Foy's first amended complaint asserted disability-related claims under § 1983, Title II of the ADA, and Section 504 of the Rehabilitation Act against Sheriff Pettway, but *only in his official capacity*. A few observations.

First, let's clarify the types of claims against Sheriff Pettway. Foy's first amended complaint does not make any claims against Sheriff Pettway (individually or in his official capacity) for

constitutional violations or even for excessive force, for supervisor liability for failure to train or supervise as to the use of force, or for unlawful policies, customs, or practices as to the use of force. Additionally, the magistrate judge's order stated that Foy did not have a viable medical care claim for various reasons and that "Foy's denial of medical care § 1983 claims against Sheriff Pettway in his official capacity may not proceed."

Thus, Foy's only claims against Sheriff Pettway are all disability-related claims for violations of the ADA and the Rehabilitation Act and are made against Sheriff Pettway in only his official capacity.

Second, Foy's disability-related claims are contained in only Count Three and Count Four (which is almost identical to Count Three). Specifically, Foy's claims in Counts Three and Four are as follows: Sheriff Pettway is liable for *his officers' and employees'* violations of Title II of the ADA and Section 504 of the Rehabilitation Act (1) in denying Foy benefits and services at the jail, such as the commissary, church services, the grievance process, and mental and physical healthcare, that nondisabled inmates enjoyed; (2) in failing to reasonably accommodate her mental health disabilities; and (3) in subjecting her to discrimination on account of her disabilities, including by failing to hold her safely and appropriately.

Foy's § 1983 claim is also based on violations of the ADA and Rehabilitation Act. Foy claims Sheriff Pettway in his official capacity is liable for (1) failing to train, monitor, and discipline his

officers and employees as to compliance with the ADA and the Rehabilitation Act, (2) being deliberately indifferent to Foy's rights under those statutes, and (3) instituting a policy, custom, or practice of not accommodating disabled inmates or providing them appropriate treatment and thereby allowing violations of those statutes to occur.

Sheriff Pettway's summary judgment motion[5] argued, *inter alia*, that as to the first prong of qualified immunity: (1) Foy did not show a violation of either federal disability statute by Sheriff Pettway's officers and employees; (2) in any event, Sheriff Pettway did not have supervisor liability for the conduct of his officers and employees; and (3) Foy did not show a policy, custom, or practice that resulted in violations of either disability statute. Citing supporting affidavits, Sheriff Pettway contended, *inter alia*, that: (1) Foy was appropriately classified, monitored, and disciplined for her behavior while in custody; (2) a private contractor, Advanced Correctional Healthcare, Inc., and not Sheriff Pettway, was responsible for providing medical care, performing medical screenings, and determining medical or mental health disabilities within the jail; and (3) Foy failed to make any requests or file any grievances for any injuries suffered between November 24, 2017 and November 30, 2017. Foy's deposition focuses mainly on the force used, not these claims.

---

[5] Here we refer to the portion of the defendants' joint motion for summary judgment that addressed Foy's claims against Sheriff Pettway.

Nonetheless, the magistrate judge denied summary judgment on Counts Three and Four solely on the basis that this qualified immunity defense was inapplicable to Foy's particular official capacity claims against Sheriff Pettway. In this regard, Sheriff Pettway has not shown the magistrate judge erred. A defendant sued in his *official capacity* usually cannot assert an individual capacity defense of qualified immunity. *See Lassiter v. Ala. A&M Univ., Bd. of Trs.*, 28 F.3d 1146, 1149 & n.2 (11th Cir. 1994) (en banc); *Bruce v. Beary*, 498 F.3d 1232, 1248-49 n.33 (11th Cir. 2007). Foy's counseled first amended complaint makes no disability-related claims against Sheriff Pettway *in his individual capacity*.

The magistrate judge, however, did not address Sheriff Pettway's underlying arguments that there was no evidence in the summary judgment record (1) of a deputy's or employee's violation of Foy's statutory rights under either the ADA or the Rehabilitation Act or (2) of a policy, custom, or practice of Sheriff Pettway resulting in such a statutory violation, and (3) that Sheriff Pettway could not be held liable under a theory of supervisor liability. On remand, the magistrate judge should address these issues as to Foy's claims in Counts Three and Four against Sheriff Pettway in his official capacity.

## IV. CONCLUSION

For these reasons, the magistrate judge did not err in denying the defendants' motion for summary judgment as to Foy's excessive force claim in Count One against Deputies Payne and

Ennis in their individual capacities and as to her disability-related claims in Counts Three and Four against Sheriff Pettway in his official capacity.[6]

**AFFIRMED.**

---

[6] One final observation. The defendants' notice of appeal was filed on April 19, 2023, and defendants filed their joint brief on June 29, 2023. Foy has not filed a brief in this appeal.

The notice of appeal lists Foy's address as "809 Richard Arrington Jr. Blvd. N., Birmingham, Alabama 35203" and states this is the address Foy provided in her "Motion to Stay Case and her Motion for Immediate Hearing," filed in the district court. That address is the Jefferson County Jail. Foy was under a continuing obligation to notify this Court of any changes to her address but has not done so. *See* 11th Cir. R. 25-7.

We do note that on August 7, 2024, the magistrate judge entered an order stating Foy had called his chambers with a new address and directing his clerk to update Foy's address on the district court docket. We DIRECT the Clerk's Office of this Court to send a copy of this opinion to Foy at both the address in the notice of appeal and the address newly added to the district court docket. Foy herself, however, remains under the duty to notify this Court of any change of address.