[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-15374

_____

D.C. Docket No. 1:10-cv-03638-AT

CHRISTOPHER LAWRENCE,

Plaintiff-Appellant,

versus

GWINNETT COUNTY,
DOANE,
Deputy Officer,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(February 20, 2014)

Before MARCUS and EDMONDSON, Circuit Judges, and VINSON,[*] District
Judge.

PER CURIAM:

_____

[*] Honorable C. Roger Vinson, United States District Judge for the Northern District of
Florida, sitting by designation.

Christopher Lawrence, proceeding pro se, has brought this action under Title 42, United States Code, Section 1983, arising out of an alleged unlawful arrest and malicious prosecution. He appeals (1) the District Court's order granting judgment on the pleadings in favor of Teresa B. Klein, an assistant district attorney for the Office of the Gwinnett County District Attorney, and (2) the District Court's order granting summary judgment in favor of Gwinnett County, Georgia (the "County"), and Dennis Doane, a police officer with the County. After review of the briefs and oral argument, and for all the reasons set forth below, we affirm.

I.

Lawrence brought this civil rights action against the County, Klein, and Officer Doane (together, "defendants").[1] He alleged that his Fourth Amendment rights were violated when Doane arrested him on November 5, 2008, on charges that he had sexually assaulted his adult stepdaughter, C.B. Lawrence claimed that the arrest occurred inside of his house without a warrant or probable cause. He was charged with sexual battery and aggravated sexual battery under Georgia law, but the charges were ultimately dismissed. Lawrence alleged malicious prosecution by Klein, and asserted that his Fifth and Fourteenth Amendment rights were violated.

Klein filed a motion for judgment on the pleadings on the ground that she

---

[1] Lawrence also sued the State of Georgia and William Akins, another assistant district attorney in Gwinnett County, but the claims were dismissed early on in the proceedings and are not at issue on this appeal.

2

was immune from suit. Lawrence opposed the motion, arguing that Klein was not entitled to immunity. A Magistrate Judge recommended that Klein's motion be granted because any claim against Klein in her official capacity was barred by the Eleventh Amendment, inasmuch as the claim was the functional equivalent of suit against Georgia. The Magistrate held that Klein had absolute immunity from the malicious prosecution claim as the allegations against her related to acts that were "intimately associated" with the judicial phase of Lawrence's criminal case. Over objections, the District Court agreed with the Magistrate Judge and granted Klein's motion for judgment on the pleadings.

Thereafter, the County and Doane moved for summary judgment. In support of the motion, Doane attached an affidavit in which he attested that on the night of November 5, 2008, he responded to a 911 call regarding a domestic disturbance at Lawrence's residence involving his 21-year-old stepdaughter, C.B.[2] When Doane arrived at the house, he testified that the alleged victim was "crying hysterically" as she met him in the driveway. While Lawrence disputes that C.B. was crying, it is undisputed that she was yelling and ran out of the house toward Doane when he arrived and, according to Lawrence's wife's affidavit, shouted "save me or some

---

[2] There were at least three 911 calls from the home that night, two of which were hang-ups. Officer Doane testified by affidavit that the aborted calls "gave the impression there was an on-going confrontation of some nature at the residence." For the 911 call(s) that did not result in a hang-up, the call log reflects that the operator "heard yelling" about an "ongoing problem with the daughter"; that there was a history of violence at the home; that there was a threat involving a knife; and that there "might [be] guns in the house."

language that implied [the Lawrences] were keeping her against her will in [the] home."[3] C.B. identified herself as a resident of the house and indicated that she wanted to file a report against her stepfather, Lawrence, regarding a sexual assault that occurred a couple of weeks prior in October 2008. After speaking with C.B. in the driveway, Doane attested that she invited him into the residence to discuss the matter further.[4] C.B. told Doane that, on October 25, 2008, Lawrence entered her room and began to give her a massage. When he placed his hands near her breasts, she asked him to stop. Later that day, Lawrence came into the bathroom while she was taking a shower. When she was finished, Lawrence told her that he wanted to put cream on her because "it would make her feel better." She told him "No," but he forced her body over and, "using a gloved hand, put cream on her buttocks and penetrated her anus with a finger." He then "took off his glove and inserted one of his fingers approximately one quarter inch into her vagina." According to C.B., he stopped when his wife (C.B.'s mother) came home.

Doane further attested in his affidavit that he interviewed Lawrence, who admitted to applying cream to his stepdaughter. Lawrence also provided Doane with a written statement, in which Lawrence claimed that his stepdaughter had

---

[3] Lawrence's wife's affidavit asserts: "My daughter was not crying but yelling and making accusations against my husband, the Plaintiff."

[4] At some point, neighbors came over to the residence and were standing in or near the driveway. While it is not clear from the record, that may be one reason why the parties moved inside, i.e., to further discuss the above-described allegations of sexual assault in private.

multiple different sexual partners in the past, a criminal record, and a history of mental illness. Doane testified that his direct supervisor, Sergeant Dena Guthrie (who also submitted an affidavit to this effect), arrived at the Lawrence home. Guthrie, a seasoned officer with fourteen years experience as an officer handling sexual abuse cases, also has a BA degree in Psychology and a Master's degree in Counseling. She averred that she interviewed Lawrence and C.B. at length at the house. According to Guthrie's affidavit, Lawrence admitted to her that he applied the cream to his stepdaughter, but he denied digital penetration. Guthrie informed Doane that she believed there was probable cause to arrest Lawrence. The record reflects that Guthrie was at the residence for twenty-two minutes before Lawrence was taken to the jail. Additionally, Officer Doane consulted with a detective from the Special Victims' Unit ("SVU") about the case, and the detective agreed there was probable cause to arrest Lawrence.

Lawrence opposed summary judgment, arguing that his clearly established rights were violated because he was arrested inside of his home without a warrant and without probable cause. Lawrence maintained that Doane's and Guthrie's affidavits were "shams" and that Doane was not credible, as other officers knew him to be dishonest and his affidavit was inconsistent with other evidence in the record.

The County and Doane replied to the opposition, asserting that Lawrence's

5

claims were negated by the undisputed facts. Lawrence then, without district court approval, filed a surreply, his own affidavit, and an affidavit from his stepdaughter. C.B. attested in her affidavit that she never gave Officer Doane permission to enter the home; rather, "he asked me to come back with him inside to find out what was going on." Further, although C.B. had made a victim's charge against Lawrence on November 5, 2008, she later recanted the charge. The County and Doane moved to strike the surreply, Lawrence's affidavit, and his stepdaughter's affidavit.

The matter was referred and submitted to the Magistrate Judge for a Report and Recommendation. The Magistrate Judge granted defendants' motion to strike Lawrence's surreply and the affidavits as improperly filed. Next, the Magistrate Judge recommended that summary judgment be entered in the County's favor, as Lawrence failed to state a claim against it. The Magistrate Judge also determined that Lawrence's claims under the Fifth and Fourteenth Amendments were without merit. With respect to Lawrence's Fourth Amendment claims against Doane, the Magistrate Judge concluded that Doane was entitled to qualified immunity. As the alleged victim's affidavit had been stricken, it was undisputed in the record that the entry into Lawrence's residence was constitutional as the alleged victim had given Doane consent to enter, and it was objectively reasonable for Doane to believe that she had joint access or control of the home, such that she could give Doane consent to enter in light of her age and her statement that she resided there. The Magistrate

6

Judge determined that Doane had arguable probable cause to arrest Lawrence for the charged offenses based upon C.B.'s allegations and description of the incident. Thus, Doane was entitled to qualified immunity with respect to Lawrence's claims, and the Magistrate Judge recommended that summary judgment also be granted in his favor. Lawrence filed objections to the Magistrate Judge's recommendations.

The District Court adopted the Magistrate Judge's recommendation, in part, but it disagreed with the Magistrate Judge's decision to strike the affidavits and his surreply regarding the consent issue. The Court determined that it would consider the two affidavits as part of the relevant record. In light of this determination, the record was less clear as to whether the alleged victim consented to Doane's entry into the residence. The District Court determined that it was undisputed that Doane was summoned to Lawrence's residence by an occupant of the residence. Further, when Doane arrived, the alleged victim ran outside the house, screaming for his assistance and intervention, and no member of the Lawrence family asked Doane to cease in the performance of his role. Thus, the court concluded that the alleged victim had consented to Doane's entry, or even if she had not given consent, Doane possessed an objective, reasonable basis to believe that consent had been given under the totality of the circumstances. The District Court determined that the remainder of Lawrence's objections were insufficient and granted the motion for summary judgment.

II.

On appeal, Lawrence argues that ADA Klein was not entitled to absolute immunity because she did not have enough evidence to charge him and she failed to speak with Doane about the case. Lawrence also appears to argue that, because the charges against him were administratively dismissed, Klein was acting not as a prosecutor, but rather as an administrator, so she is not absolutely immune from his claims.[5]

We review de novo a district court's entry of judgment on the pleadings, accepting the facts in the complaint as true and construing them in the light most favorable to the non-movant. Abdur-Rahman v. Walker, 567 F.3d 1278, 1280-81 (11th Cir. 2009). We liberally construe pro se briefs. Timson, 518 F.3d at 874.

The Eleventh Amendment provides immunity from suit in federal court for state officials sued for damages in their official capacity. Jackson v. Georgia Dep't of Transp., 16 F.3d 1573, 1575 (11th Cir. 1994). Moreover, a prosecutor is entitled to absolute immunity to suits for money damages for actions performed within the scope of the prosecutor's role as a government advocate, including initiation and pursuit of a criminal prosecution. Rivera v. Leal, 359 F.3d 1350, 1353 (11th Cir.

---

[5] Lawrence has also advanced arguments concerning discovery, but those arguments will not be considered as they were raised for the first time in his reply brief and are thus abandoned. See Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008).

2004). To determine whether a prosecutor's challenged actions fall within her role as an advocate, courts must examine the function and nature of the act. Buckley v. Fitzsimmons, 509 U.S. 259, 269, 113 S. Ct. 2606, 2613, 125 L. Ed. 2d 209 (1993). Prosecutors are absolutely immune for conduct that is "intimately associated" with the judicial phase of criminal process. Id. at 270, 113 S. Ct. at 2614.

Here, the District Court did not err in granting Klein's motion for judgment on the pleadings. Lawrence has not challenged the court's determination that any claims asserted against Klein in her official capacity were barred by the Eleventh Amendment because Klein was acting as a state official with respect to her role in Lawrence's criminal proceedings. Thus, we need not review the court's ruling in this respect. See Al-Amin v. Smith, 511 F.3d 1317, 1322 n.10 (11th Cir. 2008) (declining to address district court's ruling dismissing plaintiff's official capacity claims as barred by the Eleventh Amendment because the plaintiff did not appeal that ruling). Further, Klein is entitled to absolute immunity with respect to claims against her in her individual capacity, as she was acting within the scope of her role as a prosecutor when she initiated and pursued the criminal prosecution. See Rivera, 359 F.3d at 1353. Lawrence appears to contend that, because the charges were administratively dismissed, Klein was acting in an administrative capacity, rather than in a prosecutorial capacity. This argument plainly fails, however, since Lawrence's claim is not that his constitutional rights were violated by dismissal of

the charges against him. Rather, he claims that his rights were violated by Klein's alleged failure to tell the state court that there was insufficient evidence to convict and to properly investigate the facts of the case, which would be conduct that was intimately associated with the judicial phase of the criminal process. See Buckley, 509 U.S. at 270, 113 S. Ct. at 2614. Accordingly, the District Court did not err in determining that ADA Klein was entitled to prosecutorial immunity and in granting her motion for judgment on the pleadings, and we affirm as to this issue.

III.

Lawrence further argues that, based on the evidence he set forth challenging Officer Doane's credibility, the District Court should not have relied on Doane's statements in granting summary judgment. Lawrence maintains that both Doane's and Guthrie's affidavits are "shams" and should not be considered. According to Lawrence, Doane falsely attested that Lawrence had admitted to a crime and that Doane consulted with Guthrie prior to his arrest. Lawrence also contends that the alleged victim was not crying hysterically upon Doane's arrival at the residence. Furthermore, the court erred in relying on an implied-consent theory to hold that the warrantless arrest of Lawrence inside of his residence was proper. Lawrence disputes Doane's assertion that C.B. invited Doane into the house and contends that this dispute is a question for the jury. Lawrence further argues that Doane did not have probable cause to believe that Lawrence committed sexual battery based

10

on the alleged victim's statement because he had told Doane that she had a mental condition and had accused others of sexually assaulting her.[6]

We review de novo a district court's disposition of a summary judgment motion based on qualified immunity, resolving all issues of material fact in favor of the plaintiff and then addressing the legal question of whether the defendant is entitled to qualified immunity under plaintiff's version of the facts. See Case v. Eslinger, 555 F.3d 1317, 1324-25 (11th Cir. 2009). Summary judgment is proper where the evidence shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

When asserting the affirmative defense of qualified immunity, an official must first establish that he was engaged in a discretionary function at the time he performed the challenged acts. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1263-64 (11th Cir. 2004). If the official satisfies his burden of proof to show that he was engaged in a discretionary function, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. Id. at 1264. To do so, the plaintiff must show that (1) the defendant violated a constitutional right and (2) this right was clearly established at the time of the alleged violation. Id.

A warrantless entry and arrest in a home violates the Fourth Amendment ---

---

[6] Because Lawrence argues for the first time in his reply brief that the district court erred in granting summary judgment as to official capacity claims, we do not address these arguments. See Timson, 518 F.3d at 874. Nor do we consider the argument that his rights under the Fifth and Fourteenth Amendments were violated, as he does not address these claims on appeal. See id.

11

which is made applicable to the states by the Fourteenth Amendment --- unless the arresting officer had probable cause to arrest, and either voluntary consent to enter or exigent circumstances justifying immediate entry into the residence without a warrant. See Bashir v. Rockdale County, 445 F.3d 1323, 1327-28 (11th Cir. 2006). Accordingly, the existence of probable cause alone does not validate a warrantless home arrest. Id. at 1328. A third party's consent to search an area is valid under the Fourth Amendment if that party has mutual use of the area, with joint access to or control of the area for most purposes. United States v. Brazel, 102 F.3d 1120, 1148 (11th Cir. 1997). Even if the consenting party lacks the requisite relationship to the property, the Fourth Amendment is not violated where an officer has an objectively reasonable, though mistaken, good-faith belief that he has obtained valid consent to search the area. Id.

We have previously rejected the position that a failure to object constitutes consent to enter because permitting the government to establish consent to enter from the lack of objection to the entry "would be to justify entry by consent and consent by entry." United States v. Gonzalez, 71 F.3d 819, 824, 830 (11th Cir. 1996) (quotation omitted), abrogated on other grounds by Arizona v. Gant, 556 U.S. 332, 129 S. Ct. 1710,173 L. Ed. 2d 485 (2009). However, even where an officer does not receive explicit verbal consent to enter the property, consent can be implied by the circumstances. See, e.g., United States v. Ramirez-Chilel, 289

F.3d 744, 752 (11th Cir. 2002) (concluding that police officer received "some sort of implied consent to enter" where defendant yielded the right-of-way in response to officer's request for admittance).

A plaintiff can show a violation of the Fourth Amendment by showing that he was arrested without probable cause. See Brown v. City of Huntsville, 608 F.3d 724, 734 n.15 (11th Cir. 2010). An officer is entitled to qualified immunity as to a plaintiff's claim that he was arrested without probable cause if the officer shows that he had arguable probable cause, rather than actual probable cause. See Grider v. City of Auburn, 618 F.3d 1240, 1257 (11th Cir. 2010). Arguable probable cause is present where reasonable officers in the same circumstances and possessing the same knowledge could have believed probable cause existed. Id. An officer will not be held personally liable where he reasonably, but mistakenly, concludes that probable cause was present. Id.

Under Georgia law, a person commits sexual battery when he intentionally makes physical contact with the intimate body parts of another person without the consent of that person. Ga. Code § 16-6-22.1(a)-(b). A person commits aggravated sexual battery when he intentionally penetrates the sexual organ or anus of another person with an article or instrument, other than a sexual organ, without consent of that person. Ga. Code § 16-6-22.2(a)(-b).[7] C.B.'s allegations against Lawrence, if

---

[7] Under Georgia law, the police may arrest an individual for a crime without a warrant if

established, would constitute a violation of the criminal statutes under Georgia law.

In analyzing the District Court's decision, we reject Lawrence's argument that Doane's and Guthrie's affidavits are shams and should not be considered. As discussed below, any inconsistencies between the affidavits and other evidence in the record do not create a genuine disputed issue of material fact that is relevant to the consent issue. Rather, the undisputed record evidence establishes that summary judgment on qualified-immunity grounds was proper in this case.

Although the parties dispute whether Doane obtained the alleged victim's express verbal consent to enter the residence, the District Court was correct in determining that, under the totality of the circumstances, Doane had an objectively reasonable, good-faith belief that he had consent to enter the residence. See Brazel, 102 F.3d at 1148 (providing that, even if the consenting party lacks the requisite relationship to the premises, the Fourth Amendment is not violated where a police officer has an objectively reasonable, though mistaken, good-faith belief that he has obtained valid consent to search the area); see also Pavao v. Pagay, 307 F.3d 915, 920-21 (9th Cir. 2002) (concluding that the officer was given consent to enter residence, despite not being provided a verbal statement granting express consent, based on the totality of circumstances). It is undisputed in the record that Doane

the officer has probable cause to believe an act of family violence has been committed. Ga. Code § 17-4-20(a). This includes battery between stepparents and stepchildren. Ga. Code § 19-13-1.

responded to the Lawrence house on the basis of several 911 calls regarding an ongoing domestic disturbance at the residence --- involving a possible threat of violence involving a knife and, potentially, a firearm --- and the calls were made by an occupant of that house. It is further undisputed that, upon Doane's arrival, the alleged victim ran out of the residence and up to Doane, shouting "save me or some language that implied [the Lawrence's] were keeping her against her will in [the] home." Nor has Lawrence disputed that the alleged victim identified herself as a resident of Lawrence's home.

Viewed in the light most favorable to Lawrence, the evidence further shows that Doane requested the alleged victim to accompany him into the residence, and she did accompany him. Lawrence has not provided evidence disputing Doane's statement in his affidavit that he went inside the house with her after speaking with her in the driveway. Lawrence's wife's affidavit confirms that C.B. was inside the residence with Doane, as she attested that "[a]t the time [Doane] spoke to me, my daughter had gone back outside." In addition, the alleged victim attested that, after speaking to Doane in the driveway, "he asked me to come with him back inside to find out what was going on." Moreover, it is undisputed that no one --- including, notably, Lawrence himself --- protested when Doane entered and remained in the home during the investigation.[8] Under the totality of these circumstances, Doane

---

[8] We recognize, as noted before, that failure to object by itself does not constitute consent

15

had an objectively reasonable, good-faith belief that he had consent to enter the residence and investigate further. Accordingly, he is entitled to qualified immunity and Lawrence's Fourth Amendment rights were not violated by Doane's entry into his house.[9]

Doane also had arguable probable cause to arrest Lawrence for sexual battery and aggravated sexual battery. The alleged victim provided Doane with a detailed verbal statement describing the October 2008 incident, and Lawrence's actions, if true, would have satisfied Georgia's definitions of the relevant offenses. See Ga. Code §§ 16-6-22.1(a)-(b) and 16-6-22.2(a)-(b). Further, the alleged victim

to enter. See Gonzalez, 71 F.3d at 830 ("[T]he government may not show consent to enter from the defendant's failure to object to the entry."). Nevertheless, it may be a factor to consider in the totality of circumstances as to whether the officer was objectively reasonable in thinking he had consent. See Pavao, 307 F.3d at 920-21 ("Further, while the mere failure to object to an officer's entry is alone insufficient to allow an inference of consent, the fact that none of the occupants in the residence objected to Officer Pagay's entry lends further credence to the conclusion that [he had] . . . clear and unequivocal consent to enter the home.") (citing United States v. Griffin, 530 F.2d 739, 743 n.3 (7th Cir. 1976) (lack of objection to the officer's presence inside an apartment after entry supported the court's conclusion that consent to enter had been given)).

[9] In addition, based on the undisputed facts set out above, the alleged victim reasonably appeared to reside in the home and provided Doane with "some sort of implied consent to enter" the residence based on the nature of the 911 call(s) and the fact that the occupants of the house sought direct police intervention in the situation. See Ramirez-Chilel, 289 F.3d at 752; see also Pavao, 307 F.3d at 921 (considering police officer's warrantless entry in residence and finding it "especially significant in our analysis of the consent issue" that the officer was responding to a "911 call for help from one of the occupants of the residence"; concluding that while the officer "was not provided with a clear verbal statement granting him express consent to enter the home, clear and unequivocal consent to enter could be implied from the totality of the circumstances in this case"); United States v. Toyer, 414 Fed. Appx. 584 (4th Cir. 2011) (unpublished opinion) (involving situation where the occupant of a house called 911 and reported a threat of physical violence and, as here, the officer responding to the call was met by the alleged victim outside the house; court stated it was "reasonable" for an officer responding to a "frantic 911 call" to believe that he has consent to enter the house "and diffuse the potentially dangerous situation").

16

prepared a handwritten statement that was consistent with her verbal statement. Although Lawrence disputes that his stepdaughter was "crying hysterically" when she ran to meet Doane in the driveway, Lawrence does not dispute Doane's and Guthrie's observations that C.B. was very emotional as she described the alleged incident. While Lawrence challenged her credibility in the written statement he gave to Doane prior to his arrest, Doane and his fellow officers had no objective reason to believe that Lawrence was more credible than C.B.

Lawrence disputes Doane's statement in his affidavit that he consulted with Guthrie prior to arresting Lawrence, as Doane testified at a state court hearing that Guthrie arrived after he had been arrested. However, Lawrence does not dispute on appeal Doane's statement that he consulted with a detective in the SVU concerning C.B.'s statement, and the detective agreed with the assessment that he had probable cause to arrest. Lawrence had argued in District Court that, because Doane stated in his answer to the complaint that Doane relied on the alleged victim's statements in arresting Lawrence, Doane's testimony that he also consulted with a detective in the SVU was contradictory. However, Doane did not indicate in his answer that he had relied <u>solely</u> on the alleged victim's statement, and his answer does not conflict with his more expansive statements in his affidavit. Thus, the undisputed evidence shows that Doane believed he had probable cause to arrest Lawrence based, in part, on his consultation with the detective. In light of C.B.'s statements,

17

her emotional demeanor, and the SVU detective's opinion, it was objectively reasonable for Officer Doane to have concluded that probable cause existed. See Grider, 618 F.3d at 1257. Thus, despite Lawrence's protestations that Guthrie was not present at his house until after the arrest, and that he had never admitted to placing cream on his stepdaughter, Doane certainly had arguable probable cause to arrest Lawrence and Doane is entitled to qualified immunity as to the Fourth Amendment claims.

IV.

For all these reasons, we affirm the judgments in favor of the defendants as to Lawrence's Section 1983 claims.

**AFFIRMED.**